## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Janet McLaughlin,**

**Plaintiff,**

**v.**                                                      **Case No. 14-1044-JWL**

**Carolyn W. Colvin,**
**Acting Commissioner of Social Security,**

**Defendant.**

### MEMORANDUM & ORDER

Plaintiff Janet McLaughlin brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision of defendant, the Commissioner of Social Security, to deny her applications for social security disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Act.  According to plaintiff, the ALJ failed to determine whether the opinion of plaintiff's treating physician deserved deference and failed to specify what portions of the opinion were credible.  As explained in more detail below, the court rejects plaintiff's arguments and affirms defendant's decision.

**I.       Procedural Background**

In December 2010, plaintiff filed applications for disability insurance benefits and supplemental security income benefits, alleging disability beginning in March 2009 due primarily to major depression, bipolar disorder and alcohol dependency.  The applications were

denied both initially and upon reconsideration.  At plaintiff's request, an administrative law judge ("ALJ") held a hearing on September 5, 2012, at which both plaintiff and her counsel were present.  On September 14, 2012, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Social Security Act from March 9, 2009 through the date of the decision.[1]  Consequently, the ALJ denied all benefits to plaintiff.  After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council.  The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of defendant.

## II.    Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.  *See Wells v. Colvin*, 727 F.3d 1061, 1067 (10th Cir. 2013) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)).  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Wilson*, 602 F.3d at 1140).  In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.  *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

## III.    Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

---

[1] The ALJ determined that plaintiff met the insured status requirements of the Social Security Act through March 31, 2015.

2

A "disability" for purposes of the Social Security Act requires both the "inability to engage in any substantial gainful activity" and "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Bussell v. Astrue*, 463 Fed. Appx. 779, 781 (10th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Wilson*, 602 F.3d at 1140 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B))).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled, *see id*. at 1139, and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Id.* Step one requires the claimant to show that he or she is not presently engaged in substantial gainful activity. *Id*. Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step. The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments" that significantly limits his or her ability to perform basic work activities. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). The ALJ in this case concluded that plaintiff's major depressive disorder, anxiety disorder,

3

posttraumatic stress disorder, social phobia and rule-out bipolar disorder all constituted severe impairments for purposes of the regulations but determined at step three that plaintiff's impairments were not listed or medically "equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. 2013). Thus, the evaluation proceeded to the fourth step, where the claimant must show that the impairment prevents her from performing past work. *Wilson*, 602 F.3d at 1139 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

At the fourth step, the ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with several nonexertional limitations. Specifically, the ALJ determined that plaintiff was limited to occasional interaction with coworkers and no interaction with the general public; performing only simple, routine, repetitive tasks outside the context of a fast-paced production environment or as an integral part of a team; making only simple work-related decisions; and experiencing few work place changes. Based on evidence adduced at the hearing from a vocational expert (VE), the ALJ concluded that plaintiff, with those limitations, could not perform her past relevant work as a customer service worker, receptionist, general clerk, sales clerk or cashier. Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process–determining whether the claimant has the residual functional capacity "to perform work in the national economy, given her age, education, and work experience." *See id*. (quoting *Lax*, 489 F.3d at 1084).

4

At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains a sufficient capacity to perform an alternative work activity and that there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff could perform certain unskilled, medium exertional occupations available in significant numbers in the national economy, including performing work as a kitchen helper, linen room attendant, and order filler.

## IV.    Analysis of Plaintiff's Specific Argument

In her motion, plaintiff contends that the ALJ failed to determine whether the opinion of her treating physician, Dr. Maxwell Self, was entitled to deference and failed to specify what portions of the opinion he found credible. The record reflects that Dr. Self, plaintiff's primary care physician, provided plaintiff with routine health care from November 2009 through July 2012. In June 2011, Dr. Self completed a Medical Source Statement form assessing plaintiff's mental limitations in which he opined that plaintiff was "extremely limited" in her ability to maintain attention and concentration for extended periods; her ability to complete a normal workday without interruption from psychologically based symptoms; her ability to accept instructions and respond appropriately to criticism from supervisors; and her ability to respond appropriately to changes in the work setting. Dr. Self further opined that plaintiff was "markedly limited" in her ability to perform activities within a schedule and maintain regular attendance; her ability to work in coordination with or proximity to others without being

5

distracted by them; her ability to interact with the general public; her ability to ask simple questions or request assistance; and her ability to travel in unfamiliar places or use public transportation.  The ALJ concluded that the limitations noted by Dr. Self were not supported by Dr. Self's own treatment notes and he concluded that Dr. Self's opinion was not entitled to "controlling weight," but only "some weight."  According to plaintiff, the ALJ erred by failing to consider whether the opinion was entitled to deference and then simply concluded that the opinion was entitled to "some weight" without specifying what aspects of the opinion he found credible.  The court disagrees.

The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is to be accorded "controlling weight" on the matter to which it relates. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  The opinion of a treating physician "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing SSR 96–2p, 1996 WL 374188, at *2; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).  If the opinion is deficient in either of these respects, it is not to be given controlling weight.  *Id.*  But even if a treating opinion is not given controlling weight, it is still entitled to deference.  *Id.*  At the second step in the analysis, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* (citing *Watkins*, 350 F.3d at 1300–01).  This second inquiry is governed by its own set of factors, summarized as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1331 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight." *Id*. (quotation omitted). A factor-by-factor analysis of a treating physician's opinion is not required. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ expressly declined to give controlling weight to Dr. Self's medical source statement and instead assigned "some weight" to the opinion on the grounds that the extreme and marked impairments noted by Dr. Self were not supported by Dr. Self's contemporaneous treatment notes. As highlighted by the ALJ, Dr. Self's treatment notes indicate that plaintiff exhibited a "low mood and flat affect" on two occasions over nearly three years of treatment. Indeed, Dr. Self typically noted that plaintiff exhibited a "good" or "normal" mood and affect. He further noted that plaintiff was negative for suicidal ideation and was not nervous or anxious. Dr. Self's treatment notes contain no suggestion of the extensive limitations noted by Dr. Self in the medical source statement. While plaintiff contends that the ALJ failed to consider whether the opinion was entitled to deference, the ALJ implicitly made that determination when he assigned "some weight" to the opinion and explained his reason for doing so. *See id*. (ALJ satisfied § where he assigned "very little weight" to the opinions and provided reasons for doing so). In other words, it is clear from the ALJ's written decision that he considered whether and to

7

what extent Dr. Self's opinion was entitled to deference.  Moreover, although plaintiff asserts that the ALJ erred by failing to specify which parts of the medical source statement he found credible, the ALJ adopted some of the limitations noted by Dr. Self in his RFC finding (including the restrictions on interaction with the general public and changes in the work setting)—an implicit finding that those restrictions were consistent with and supported by substantial evidence in the record.  Because the ALJ's findings with respect to Dr. Self's medical source statement are sufficiently specific to reflect the weight he assigned to the opinion and the reason for that weight, remand is not required.

In sum, having carefully reviewed the record in this case and having considered plaintiff's arguments in light of the record, the court concludes that substantial evidence supports defendant's decision to deny Ms. McLaughlin's application for disability benefits and that no deviation from established legal standards occurred.

**IT IS THEREFORE ORDERED BY THE COURT THAT** judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

Dated this 8th day of January, 2015, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

8